UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **JASON LEOPOLD**, et al., |
| Plaintiffs, |
| v. |
| **U.S. DEPARTMENT OF JUSTICE**, |
| Defendant. |

Case No. 1:20-cv-03651 (TNM)

**MEMORANDUM OPINION**

A media company and one of its then-employees filed Freedom of Information Act requests with the Department of Justice related to the 2020 presidential election. After DOJ's initial response, Plaintiffs sued to move document production forward. The merits of this dispute have since been resolved, and now the Court considers Plaintiffs' motion for attorney's fees and costs. The parties agree that Plaintiffs are entitled to and eligible for fees. But because Plaintiffs' request is excessive, the Court will award less than they seek.

**I.**

Buzzfeed, Inc., and Jason Leopold (collectively, "Buzzfeed") filed a FOIA request with DOJ shortly after the 2020 presidential election. *See* Compl. ¶ 1, ECF No. 1. After DOJ responded and told Buzzfeed that it may take six months for DOJ to run a search before producing any records, Buzzfeed sued DOJ in this Court. *Id.* ¶¶ 10–13. Over the next four years, DOJ identified around 720 pages of responsive material and produced around 360 pages either in full or in part. *See* Brinkmann Decl. ¶¶ 8–10, ECF No. 34-2. It withheld the rest under various FOIA exemptions. *Id.* Litigation progressed as the parties negotiated those withholdings, and eventually DOJ moved for summary judgment. Def.'s Mot. for Summ. J.,

ECF No. 34. Buzzfeed responded with a cross motion for summary judgment. Pls.' Cross Mot. for Summ. J., ECF No. 36. The dispute centered around whether DOJ properly withheld parts of five documents. *See Vaughn* Index at Bates Nos. 60–62, 126–28, 159–65, 173–75, 498, 488–89, ECF No. 34-10. This Court granted DOJ's motion for summary judgment with respect to all but one document. *See Leopold v. DOJ,* No. 1:20-cv-03651, 2024 WL 5159099, at *9–10 (D.D.C. Dec. 18, 2024). While DOJ thus had to turn over that document to Buzzfeed, it could properly withhold the rest. *Id.*; *see* Order, ECF No. 44. That decision resolved the core of this case.

Buzzfeed then moved for attorney's fees and costs. Pls.' Mot., ECF No. 54. It requests about $52,000 in total. Pls.' Reply at 2, ECF No. 56 (totaling requested fees and costs at $51,975.51). DOJ does not dispute that Buzzfeed is eligible for fees and entitled to them. Def.'s Opp'n. at 3, ECF No. 55. But it argues that Buzzfeed asks for too much. *Id.*

The Court agrees that Buzzfeed's fees request is excessive and accordingly reduces it. But it finds Buzzfeed's costs request reasonable and thus grants it in full.

## II.

To obtain fees, a plaintiff must normally clear two hurdles: it must show both that it is eligible for fees and that it is entitled to them. *Jud. Watch, Inc. v. Dep't of Com.*, 470 F.3d 363, 368–69 (D.C. Cir. 2006). If a plaintiff gets that far, the Court then asks whether the fees request is reasonable. *Id.* at 369. Because DOJ concedes that Buzzfeed is eligible for fees and entitled to receive them, Def.'s Opp'n at 3, the only question before the Court is whether the amount Buzzfeed claims is reasonable. *See Queen Anne's Conservation Ass'n v. Dep't of State*, 800 F. Supp. 2d 195, 198 (D.D.C. 2011).[1]

---

[1] While DOJ does not contest Buzzfeed's entitlement to fees, that question may be a closer call than Buzzfeed suggests. Part of a plaintiff's entitlement to fees, for example, requires it show

2

This standard comes from FOIA itself.  FOIA provides that courts may award "reasonable" attorney fees and costs.  5 U.S.C. § 552(a)(4)(E)(i).  As a "substantially prevail[ing]" plaintiff (as the Government concedes Buzzfeed is), Buzzfeed bears the burden of showing that its claimed fees and costs are reasonable.  *Id.*; *see Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 320 (D.D.C. 2020).  To meet its burden, Buzzfeed "must submit [its] fee bill to the court . . . ."  *Jud. Watch*, 470 F.3d at 369 (cleaned up).  The Court then assesses "the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed."  *Id.* (cleaned up).

There is no real dispute about Buzzfeed's hourly fee.  To calculate its rate, Buzzfeed used the "Fitzpatrick Matrix."  Pl.'s Mot. at 8.  "The Fitzpatrick Matrix is a schedule of hourly fees based on years of attorney experience developed by the U.S. Attorney's Office for the District of Columbia."  *Louise Trauma Ctr. LLC v. DHS*, No. 1:20-cv-01128, 2023 WL 3478479, at *4 n.3 (D.D.C. May 16, 2023).  DOJ does not question the use of the Fitzpatrick Matrix rates here, so neither does this Court.

That leaves the reasonableness of the hours Buzzfeed billed.  To make this assessment, courts discounts "time spent in duplicative, unorganized or otherwise unproductive effort[s]."  *Env't. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (cleaned up).  Thus, the Court should reduce fees for "time expended on issues on which [Buzzfeed] did not ultimately prevail."  *Urb. Air Initiative*, 442 F. Supp. 3d at 321 (cleaned up).  Likewise, the Court may

---

that the public benefitted from its case.  *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008).  Whether the public benefitted turns on "both" the "potential public value of information sought" *and* the actual "effect of litigation."  *Id.*  Buzzfeed claims its request had a "significant *ex ante* public benefit" because it sought "never-before-seen information about DOJ's leadership's preparedness and responses to election issues in 2020."  Pls.' Mot. at 7.  But Buzzfeed makes no attempt to show how the documents actually disclosed during litigation benefitted the public.  Its sparse elaboration may have thus posed a barrier for Buzzfeed absent DOJ's concession.

reduce fees if Buzzfeed "achieved only limited success" or based on the particular "facts of [this] case." *Hall v. CIA*, 115 F. Supp. 3d 24, 28 (D.D.C. 2015) (cleaned up); *Urb. Air Initiative*, 442 F. Supp. 3d at 321.

In determining a reasonable fee, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). That is because "[t]he essential goal . . . is to do rough justice, not to achieve auditing perfection." *Id.* So the Court "may use estimates in calculating and allocating an attorney's time." *Id.* And the "court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for . . . limited success." *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983); *see Urb. Air Initiative*, 442 F. Supp. 3d at 326 (concluding, "in its discretion," that a requested award "would be excessive" considering several general aspects of the case).

### III.

The Court applies these guideposts to Buzzfeed's requests in a few steps. First, it considers Buzzfeed's fee requests covering the merits stages of litigation. Then, it turns to requests for the fees stage of litigation. It concludes with Buzzfeed's claimed costs.

### A.

Starting with the merits stage, Buzzfeed's fee requests for this period span from when it drafted its Complaint against DOJ to the conclusion of summary judgment briefing. The Court approaches these fees in two parts: before and after summary judgment briefing began. The pre-summary judgment period covers work from December 2020 through most of April 2024. During this period, Buzzfeed drafted and filed a Complaint against DOJ, DOJ searched for responsive records, and DOJ produced non-exempt records to Buzzfeed. *See* Topic Decl., Ex. 1 ("Fee Table") at 3–5, ECF No. 54-1. Buzzfeed reviewed documents, and both parties negotiated

search parameters and discussed whether their dispute required summary judgment briefing. *Id.*; *see, e.g.*, Joint Status Report, March 10, 2023, at 2, ECF No. 27 (describing the parties' focus on narrowing issues for future briefing). The summary judgment period begins in late April 2024, when the parties briefed cross motions for summary judgment and concludes with the issuance of this Court's opinion granting and denying both motions in part. *See* Fee Table at 5–6. The Court considers these periods separately to better account for Buzzfeed's success at each point.

**i.**

*Before summary judgment.* Buzzfeed claims about $18,731 for its work during this period. *See* Fees Table at 3–5 (totaling entries from December 2020 through April 2, 2024). Its fee entries across these years cover a variety of work, including drafting and filing its Complaint against DOJ, reviewing many minute orders and filing many status reports, holding strategy meetings about the case, reviewing DOJ *Vaughn* index drafts, and corresponding with DOJ. *See id.* For all of its entries seeking some amount of fees during this period, Buzzfeed asks for 100 percent of its time billed (unlike some later entries that ask only for a portion of its total fees). *See id.* Considering Buzzfeed's mixed success record, the Court finds this request excessive.

First consider where Buzzfeed's pre-summary judgment work resulted in wins. Its lawsuit prompted more records than DOJ at first produced. This much is clear from supplemental productions DOJ made at various points, starting before summary judgment. For instance, DOJ began its search in late 2020 and completed much of it by the end of 2022. Brinkmann Decl. ¶ 8, ECF No. 34-2. But amid negotiations, it made supplemental productions in March 2023, before ever moving for summary judgment, and again in April 2024 on the heels of filing its opening brief. *Id.* ¶¶ 9-10. Those productions followed directly from Buzzfeed's early litigation efforts.

More, several entries from this period seek fees for reviewing DOJ's draft *Vaughn* indices describing productions. *See, e.g.*, Fee Table at 4, March 8, 2023, entries. Courts award fees "for time spent reviewing the adequacy of the defendants' production to determine how to proceed." *See Hardy v. BATFE*, 293 F. Supp. 3d 17, 30 (D.D.C. 2017); *Elec. Priv. Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 159 (D.D.C. 2015) ("[T]o the extent that the released documents are being reviewed to evaluate the sufficiency of the release or the propriety of a specific withholding so that the attorney can then challenge the release or withholding, such document review time is properly included in a FOIA attorney's fees award."). Buzzfeed's review of these materials guided its later challenges to DOJ withholdings that resulted in a partially favorable ruling. *Cf. CREW v. DOJ*, 825 F. Supp. 2d 226, 229, 231 (D.D.C. 2011) (denying a plaintiff fees for time spent "reviewing the documents it instituted [the] lawsuit to obtain" where that plaintiff never challenged the agency's withholdings). A reasonable fee award accounts for these successes.

But a reasonable fee award also accounts for a few shortcomings. DOJ's early cooperation with Buzzfeed, for instance, calls for a reduction. In general, courts decline to award fees based on the "mere filing" of a complaint and an agency's "subsequent release of the documents" when the agency would have released those documents absent litigation. *See Codrea v. BATF*, 272 F. Supp. 3d 49, 53 (D.D.C. 2017) (cleaned up); *see also Env't Integrity Project v. EPA*, 316 F. Supp. 3d 320, 325 (D.D.C. 2018) ("The fee-shifting provision of FOIA is not meant to punish an agency for delays in processing requests, but to reward plaintiffs whose lawsuits alter an agency's slowness and bring about disclosure."). DOJ's early actions suggest that it would have released at least some documents without litigation. Shortly before Buzzfeed sued, DOJ told Buzzfeed that it received Buzzfeed's FOIA request and warned that processing

times would depend on record complexity.  Acknowledgment Letter at 2, ECF No. 34-4.  It also told Buzzfeed that its request had "been granted expedited processing," *id.*, and estimated that processing "might be completed within six months," but could change depending on the search's fruits.  December Email at 1, ECF No. 1-4.  In many ways, reality tracked DOJ's initial representations.  DOJ made significant headway on its search and production within six months and continuously communicated to Buzzfeed about its progress.  *See* Joint Status Report, June 8, 2021, at 1, ECF No. 14 (noting that DOJ had completed its "initial responsiveness review" of electronic searches by this point).  All this occurred without the Court issuing orders favorable to Buzzfeed.  *See generally* Fee Table at 3–5.  Given DOJ's early cooperation, full fees are not in order.

Buzzfeed's losses also call for a reduction.  Some entries from the pre-summary judgment period expressly claim full fees for work on Buzzfeed's unsuccessful challenges.  For example, Buzzfeed seeks full fees for reviewing DOJ's "b7e DOJ FOIA guide," but its challenge to DOJ's Exemption 7(E) withholding failed.  Fee Table at 5; *Leopold*, 2024 WL 5159099, at \*7.  Other entries implicitly claim full fees for losing issues.  Look to Buzzfeed's several full fees requests for status conference preparation and briefing strategy work.  *See, e.g.*, Fee Table at 5, Jan. 24, 2024, entry ("meeting re: strategy for upcoming in person status conference & Vaughn indices"); *id.*, March 25, 2024, entry ("exchanged emails with client re: briefing strategy").  None of these entries specify which withholding or documents the work covered.  Considering Buzzfeed's defeat on most of its challenges to DOJ withholdings later down the road, one can safely assume that a fair portion of these earlier efforts served these losing aims.  Full fees are thus inappropriate for these entries.

Bearing in mind DOJ's early cooperation and Buzzfeed's mixed success record, the

Court reduces its fee award for the pre-summary judgment period to 50 percent of its requested sum. The total for that portion is thus $9,365.50.

Both parties see things differently. DOJ wants to pay less, and Buzzfeed wants to receive more. DOJ first asks the Court to fully eliminate fees for time spent reviewing joint status reports on top of an across-the-board reduction. But reviewing court orders and filing joint status reports, however simple, is part of the litigation process. *See Hernandez v. Chipotle Mexican Grill, Inc.*, 257 F. Supp. 3d 100, 110 (D.D.C. 2017) (awarding fees for editing and filing joint status reports). Buzzfeed's use of the lowest billing increment for these tasks and the Court's halfway reduction for fees across this period adequately captures the small amount of time this work took.

DOJ also proposes that the Court further divide the pre-summary judgment period and award Buzzfeed substantially less for much of that period. Def.'s Opp'n at 6–7. DOJ claims that for the final year before summary judgment, record "production was complete" and the only task left was discussing the possibility of summary judgment, which justifies fewer fees than earlier work. *Id.* at 6. The Court sees no meaningful difference between the start and finish of the pre-summary judgment chapter. Production, negotiations, and status report filings occurred from beginning to end of this phase. In fact, DOJ's assertion that "production was complete" a year before summary judgment began ignores that DOJ made a supplemental production at the end of this period, just before the summary judgment period. Brinkmann Decl. ¶¶ 9–10. Applying the same reduction rate across the board thus better does "rough justice" than further division. *Fox*, 563 U.S. at 838.

Buzzfeed, in contrast, claims that full fees are appropriate by pitching this period as essential for its success on summary judgment. Pls.' Reply at 4, 7. The Court agrees that

8

Buzzfeed never would have made it to summary judgment without the lead up.  But getting to summary judgment does not entitle a litigant to full fees.  Buzzfeed *lost* on most issues come summary judgment, meaning that a portion of its early efforts were tied to losing claims.  Courts award fees for litigation victories, not for unsuccessful litigation efforts.  *See New York v. Microsoft Corp.*, 297 F. Supp. 2d 15, 35 (D.D.C. 2003).  The Court's 50 percent award appropriately balances these considerations.

**ii.**

*Summary judgment.*  The second part of Buzzfeed's merits work covers the summary judgment stage.  For this period, Buzzfeed claims about $9,073.  *See* Fee Table at 5–6 (totaling entries from April 23, 2024, through December 9, 2024).  Once more, the Court finds that amount excessive and instead awards $4,899.40.  This value derives from a few threads.

First, the Court awards $3,135 for any summary judgment work where time entries did not focus on one issue over another.  Buzzfeed seeks 39 percent of its claimed fees for this work in its opening brief and 23 percent for this work in its reply brief.  The Court finds that a 20 percent award for most of these entries more appropriately tracks Buzzfeed's success.  Recall that ultimately, its initial summary judgment brief prompted DOJ to remove a redaction on one document it sought, Breyan Decl. ¶ 6, ECF No. 39-2, and full briefing resulted in a favorable ruling by the Court on one other document, *Leopold*, 2024 WL 5159099, at *5.  It lost on summary judgment regarding the other three documents.  *Id.* at *6–10.  Buzzfeed took 3 out of 15 pages (20 percent) to litigate these positions in its first brief, and 2 out of 12 pages (about 16.7 percent) on reply.  Pages numbers can serve as proxy for courts to determine how big a fee to grant.  *See Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 899 (D.C. Cir. 2004) (noting that by "using motions pages as a proxy," the district court "properly apportioned" fees between

parties). The Court uses that ratio and awards Buzzfeed about 20 percent of its claimed fees for its opening brief. That amounts to about $2,235. For its reply brief, the Court awards Buzzfeed the full $900 it seeks given that DOJ does not oppose. Def.'s Opp'n at 6. The total for these entries is thus $3,135.[2]

Contrary to Buzzfeed's view, this ratio captures the reality that even if Buzzfeed pursued only the winning one or two issues, briefing still would have required an introduction, a facts section, and a standard of review. Pls.' Reply at 3 (arguing that full fees are appropriate because even shorter briefs would always include "introduction, background, and legal standards sections"). The non-argument sections of that one- or two-issue brief would inevitably be shorter and less involved than a several-issue brief like Buzzfeed's. *See Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 63 (D.D.C. 2011) (lowering a fee award where, had the case gone to summary judgment, briefing would have involved "straightforward issues"). The one-fifth page number ratio captures the difference. *See Douglas v. District of Columbia*, 67 F. Supp. 3d 36, 43 (D.D.C. 2014) (limiting a fee award given the "routine" issue at hand). Buzzfeed is thus entitled to $3,135 for its general time on summary judgment work where it does not tie an entry to specific issues.

Second, the Court awards $694.40 for summary judgment work on a hodge podge of issues for which Buzzfeed claims 100 percent of its fees. Starting with the easy part, $182.40 of this amount stems from Buzzfeed's work on winning issues. Buzzfeed seeks $182.40 for revising an argument section on the issues it labels "Category A and C." *See* Fee Table at 6. As

---

[2] In its reply brief, Buzzfeed agrees to a partial reduction in fees (down from its request of 39 percent of the full amount to 22 percent) where its work focused on foreseeable harm. Pls.' Reply at 2 n.1. The Court applies a 20 percent reduction across non-winning summary judgment issues, so it need not take on those foreseeable harm entries separately. It notes, though, that Buzzfeed's concession is close to the rate the Court now applies more broadly.

Buzzfeed explains, Category A refers to the document the Court ordered DOJ to turn over following summary judgment, *Leopold*, 2024 WL 5159099, at *5; Pls.' Mot. at 3, 9 (noting that Category A refers to the "OLA 2020 Election Triage" document). And Category C refers to the document DOJ disclosed after Buzzfeed filed its opening summary judgment brief. Breyan Decl. ¶ 6; Pls.' Mot. at 3 (noting that Category C refers to an email about voter registration). Because Buzzfeed won on these issues, the Court awards full fees for its work there.

Buzzfeed is entitled to less for the rest of its entries seeking full fees. That is because nowhere else on its Fee Table does Buzzfeed specify work on winning issues. Buzzfeed requests 100 percent of fees, for example, for exchanging emails "regarding agency's extension request," and editing its summary judgment brief "in light of" colleagues' "comments." Fee Table at 6. Was the extension request somehow related to the Category C document? Were those colleagues' comments about the Category A document the Court later ordered DOJ to produce? The Fee Table did not say, so neither can this Court. Meanwhile, some entries request full compensation for issues on which Buzzfeed lost. *See id.* (seeking fees for revising Buzzfeed's reply brief over the Exemption "7(E) issue"). None of these entries provides reason to award full fees. Instead, the Court treats them the same as the bulk of Buzzfeed's summary judgment entries by imposing a one-fifth cap based on the page number proxy. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) ("A fixed reduction is appropriate given the large number of entries that suffer from one or more of the deficiencies we have described."). Because Buzzfeed claimed about $2,558 for general summary judgment work billed at 100 percent, the Court awards it $512, or about 20 percent of that total. Adding in the $182.40 Buzzfeed requests for its time on winning issues, the total for these entries is $694.40.

Finally, the Court awards Buzzfeed $1,070 for the three entries on summary judgment

11

work that DOJ does not contest.  *See* Def.'s Opp'n at 6 (stating that DOJ "does not challenge" Buzzfeed's requests for $153.60, $230.40, and $687.50).

Altogether, this brings Buzzfeed's summary judgment fees award to $4,899.40.  Adding to that portion Buzzfeed's fee awards for the pre-summary judgment phase, the total sum comes in at just about $14,265 for the merits stage of litigation.

**B.**

Next up are Buzzfeed's fees for its work disputing fees after summary judgment.  Though "hours reasonably devoted to a request for fees are compensable, fees on fees must be reasonable, and not excessive."  *Urb. Air Initiative*, 442 F. Supp. 3d at 326 (cleaned up).  The Court has a duty to "scrutinize fees-on-fees to ensure that the total is reasonable and . . . does not represent a windfall for the attorneys."  *Id.* at 327 (cleaned up).  Here too, Buzzfeed's request is unreasonable.

Buzzfeed claims about $24,000 for this period.  *See* Fee Table at  6–8 (totaling fees from December 18, 2024, through October 9, 2025); Topic Decl., Ex. 1 ("Supplemental Fee Table") at 5 (totaling fees from December 16, 2025, through December 22, 2025), ECF No. 56-1.  That is almost as much as what Buzzfeed originally claimed in merits litigation costs.  *See* Fee Table at 3–8 (totaling merits stage entries for a sum of $27,803).  And it is significantly more than the Court's actual award on the merits stage.  Such a sum would be an "unsupportable windfall."  *Urb. Air Initiative*, 442 F. Supp. 3d at 327.  The Court instead limits Buzzfeed's fees-on-fees to 30 percent of its total merits award, which is about $4,280.  *Cf. id.* (finding a fee request of about 30 percent of the total claimed litigation fees excessive in a case involving higher sums than those at issue in Buzzfeed's case).

**C.**

Last, Buzzfeed claims $1,398.51 in costs.  Topic Decl., Ex. 2 ("Itemized Costs") at 6, ECF No. 56-1.  It provides an itemized list outlining its costs and seeks only partial reimbursement for most of them.  *Id.*  As the list reflects, Buzzfeed "reasonably incurred" these costs a result of the litigation, 5 U.S.C. § 552(a)(4)(E)(i), so the Court finds a full award appropriate.

**IV.**

To sum up, Buzzfeed's fee award includes: (1) $14,265 for the merits stage; (2) $4,280 for the fees stage; and (3) $1,398.51 in costs, for a total of $19,943.51.  The Court will accordingly grant Buzzfeed's fee request in part and deny it in part.  A separate Order will issue.

Dated: April 21, 2026

TREVOR N. McFADDEN
United States District Judge

13